UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CONNIE S. ROBERTS, | ) |
| Plaintiff, | ) |
| vs. | ) 1:10-cv-0176-TWP-TAB |
| INDIANA BUREAU OF MOTOR VEHICLES, | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.     Introduction**

This case involves the November 2009 termination of an Indiana Bureau of Motor Vehicles' employee who claims she was discriminated and retaliated against in violation of the Americans with Disabilities Act and the Family Medical Leave Act after developing cancer and taking time off work in 2007 and 2008 to pursue treatment. The threshold issue is whether the Eleventh Amendment bars Plaintiff's claims.[1] Plaintiff does not dispute that the Indiana Bureau of Motor Vehicles ("BMV") is the state or a state agency. However, contrary to her amended complaint, Plaintiff now claims that she actually worked for the Bureau of Motor Vehicles Commission ("BMVC"), which she asserts is not part of the state.[2] For the reasons below, the Magistrate Judge finds that even if Plaintiff were a BMVC employee, the Eleventh Amendment

---

[1]Defendant also argues that Plaintiff requests damages that are unavailable and that Plaintiff cannot establish a *prima facie* case for either claim. [Docket No. 46.] However, these arguments are not addressed in light of the recommended disposition on Eleventh Amendment grounds.

[2]Indiana Code § 9-14-1-1 and § 9-15-1-1 makes a distinction between the Indiana Bureau of Motor Vehicles and the Bureau of Motor Vehicles Commission.

still applies, and therefore recommends that Defendant's motion for summary judgment [Docket No. 44] be granted.

**II.      Discussion**

   *A.      The BMV*

The doctrine of sovereign immunity is embodied in the Eleventh Amendment and bars private lawsuits in federal court against nonconsenting states, state agencies, or state officials acting in their official capacities. *Bd. of Tr. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363–64 (2001). Defendant argues sovereign immunity bars Plaintiff's ADA and FMLA claims. [Docket No. 46 at 10–15.] As Defendant correctly argues, "it is well-established that private individuals cannot recover money damages from a State for violation of Title I of the ADA." *Janecke v. Ethan Allen Sch.*, No. 09-cv-894, 2010 WL 2680170, at *1 (E.D. Wis. July 1, 2010) (citing *Garrett*, 531 U.S. at 374 n.9). It is also true that a private individual alleging a self-care FMLA claim cannot recover from a state or state agency. *Toeller v. Wis. Dep't of Corr.*, 461 F.3d 871, 879–80 (7th Cir. 2006). Plaintiff acknowledges these points of law and does not dispute that the BMV is part of the state. [Docket No. 49 at 9.] Moreover, Plaintiff's amended complaint states that she worked for the BMV and Defendant admits this fact in its answer. [Docket Nos. 27, 28.] The pleadings are therefore sufficient to find that the Eleventh Amendment bars Plaintiff's claims. *See* Fed. R. Civ. P. 56(c) (stating that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

### B. The BMVC

Without seeking leave from the Court to further amend the amended complaint, Plaintiff asserts in her opposition to summary judgment that sovereign immunity is inapplicable because Plaintiff actually worked for the BMVC, which she claims is not the state or a state agency. [Docket No. 49 at 2.] This newly asserted factual allegation ignores the requirements of Federal Rule of Civil Procedure 15(a) and is therefore not properly before the Court for consideration. *See E.E.O.C. v. Lee's Log Cabin, Inc.*, 546 F.3d 438, 443 (7th Cir. 2008) (holding that the very first mention of facts in a response brief for summary judgment entitled the court to regard the claim as "too late to change so basic a factual premise in a case."); *Conner v. Ill. Dep't of Nat. Res.*, 413 F.3d 675, 679 (7th Cir. 2005) (affirming a decision to disregard a claim raised for the first time in a response to summary judgment); *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002) ("[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

Even if Plaintiff's amended complaint alleged that Plaintiff worked for the BMVC, such an allegation would not save Plaintiff's claims because the BMVC is part of the state. To determine whether the BMVC is a state or state agency, a court must look at two factors: (1) the BMVC's financial autonomy, and (2) its legal status. *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695–96 (7th Cir. 2007). The Seventh Circuit has summarized these factors as follows:

> [T]he most important factor is the extent of the entity's financial autonomy from the state. That inquiry is composed of five subparts (1) the extent of state funding; (2) the state's oversight and control of the entity's fiscal affairs; (3) the entity's ability to raise funds; (4) whether the entity is subject to state taxation; and (5) whether a judgment against the entity would result in an increase in its appropriations. Beyond these financial considerations, we

> also consider the general legal status of the entity. Where this factor is concerned, we prioritize substance over form.

*Id.* (internal citations and quotation marks omitted). Plaintiff and Defendant do not cite any cases that address the BMVC's financial or legal status, and this appears to be an issue of first impression. For the reasons below, the Magistrate Judge finds that the BMVC is not financially autonomous and its legal status does not render it separate from the state.

### 1. *Financial autonomy*

Defendant argues there are two significant financial restrictions on the BMVC: (1) the BMVC is required to transfer funds generated by certain fees to the state treasurer on a daily basis and those funds must then be credited to the highway fund or other funds for public safety, and (2) the BMVC must submit a budget proposal to the state budget agency for consideration and approval on a biennial basis. [Docket No. 51 at 8 (citing Ind. Code § 9-29-1-1; Ind. Code § 9-29-1-2; Ind. Code § 9-29-3-23).] While these restrictions reflect limitations on the BMVC's financial autonomy, they alone do not necessarily prevent the BMVC from being financially autonomous.

In *Shisler v. State Lottery Commission of Indiana*, No. 1:07-cv-1190-LJM-TAB, 2008 WL 1884061, at *3 (S.D. Ind. Apr. 25, 2008), the Court concluded that the lottery commission was financially autonomous despite two similar restrictions. *Id.* The Court observed that "[t]he Lottery is required by statute to make quarterly transfers to the treasurer of Indiana, namely, $7.5 million for the teacher's retirement fund, $7.5 million for the pension relief fund, and all remaining surplus revenue to the Build Indiana fund . . . ." *Id.* The Court also observed that "[t]he Lottery is subject to annual audits by the state and is statutorily required to submit monthly and annual reports to various government agencies . . . ." *Id.* Despite the statutory

transfer and budget requirements, the Court found that the lottery maintained absolute financial control because (1) the lottery does not receive state funding, (2) is able to raise funds independently of the state, (3) may purchase insurance, (4) may own, sell or lease real and personal property, (5) may enter into contracts, and (6) may sue and be sued in its own name without impacting the state treasury. *Id.*

In this case, the BMVC is financially autonomous in the sense that it may procure insurance against any loss, contract for the operation of service license branches, and take any other action necessary to achieve the commission's purpose. Ind. Code § 9-15-2-2. Indiana Code § 9-29-14-5 also provides that the BMVC can collect funds through service charges, and Indiana Code § 9-29-14 sets forth a barrage of fees for different services. The BMVC also has the authority to administer these funds, and "[m]oney in the fund at the end of a state fiscal year does not revert to the state general fund." Ind. Code § 9-15-2-1(9); Ind. Code 9-29-14-3. This, however, is the full extent of the BMVC's financial autonomy.

In contrast, Indiana Code § 9-29-14-5 also provides that the BMVC may receive funds from "other source[s], including appropriations." Plaintiff argues that the BMVC does not actually receive appropriations and cites Indiana's state budget report for July 1, 2009, to June 30, 2011. [Docket No. 50, Ex. 1.] Plaintiff points out that the report does not identify any appropriations, only "Designated Funds." [Docket No. 49 at 4.] However, pursuant to Indiana Code § 4-12-1-13.5, dedicated funds are state funds that the state budget director determines are necessary to support an agency. "The amount certified by the budget director for an agency supported by any dedicated fund is appropriated to pay that cost from the dedicated fund used to support the agency." Ind. Code § 4-12-1-13.5(c). Such funding from the state amounts to an

5

appropriation. *See, e.g., Turner v. State of Ind. Teachers' Ret. Fund*, No. 1:07-cv-1637-DFH-JMS, 2008 WL 2324114, at *3 (S.D. Ind. June 5, 2008) (explaining appropriations and dedicated funds in the context of the Teachers' Retirement Fund). Dedicated funds are simply appropriations set aside for a specific purpose or agency. *See Clark Cnty. Council v. Donahue*, 873 N.E.2d 1038, 1042–43 (Ind. 2007) ("[T]he fund is what is referred to in government finance parlance as a 'dedicated fund,' *i.e.*, the spending of the revenue dedicated to it is limited by law to specific purposes."). Examining the influence that dedicated funds have on the BMVC, the dedicated funds received by the BMVC are substantial. For example, from 2007 to 2008, the BMVC's expenditures were $61,779,652 and the BMVC requested $80,078,652 in dedicated funds for 2009 to 2010. [Docket No. 50, Ex. 1 at 3.] Thus, this factor weighs heavily against financial autonomy.

The BMVC's financial autonomy is further diminished when considering the financial impact that certain judgments against the BMVC would have on the state treasury. Indiana Code § 9-15-4-1 states that Indiana Code § 34-13-3 applies to a claim or suit in tort against a member or employee of the BMVC. Indiana Code § 34-13-3-24 states that:

> There is appropriated from the state general fund sufficient funds to:
> (1) settle claims and satisfy tort judgments obtained against the state; and
> (2) pay expenses authorized by this chapter, including:
> (A) liability insurance premiums;
> (B) interest on claims and judgments; and
> (C) expenses incurred by the attorney general in employing other counsel to aid in defending or settling claims or civil actions against the state.

This language indicates that there is an increase in appropriations for certain judgments against the BMVC.

Despite Indiana Code § 34-13-3-24, Plaintiff argues that the BMVC may be sued independently from the state because Indiana Code § 9-15-1-1 states that the BMVC "may sue and be sued and plead and be impleaded." [Docket No. 49 at 4.] This argument fails because Indiana Code § 9-15-1-1 does not state that the BMVC may sue and be sued "in its own name." In *Shisler*, the Court examined Indiana Code § 4-30-3-1 and determined that the phrase "sued and be sued in the name of the commission . . . ." means that a "judgment against the Lottery is collectable against the Lottery alone and would not directly implicate the Indiana State Treasury." *Shisler*, 2008 WL 1884061, at *3. In *DeHarder Investment Corp. v. Indiana Housing Financial Authority*, 909 F. Supp. 606, 612 (S.D. Ind. 1995), the Court examined Indiana Code § 5-20-1-4(a)(18) and determined that the phrase "the power to sue and be sued in its own name, plead and be impleaded" allows the housing authority to function "with a significant amount of operational independence." However, missing from the language of the BMVC's enabling code, Indiana Code § 9-15-1-1, is the phrase sue and be sued "in its own name" or "in the name of the commission." The legislature included such language in the lottery's and housing authority's enabling code, but yet did not use that language for the BMVC. *See Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 452 (2002) (explaining that a general principle of statutory construction is that when a legislature includes particular language in one statute but omits it in another, it is generally presumed an intentional disparate inclusion or exclusion). This distinction, coupled with the tort claim appropriation provision, indicates that the legislature intended for the BMVC to be sued as part of the state.[3]

---

[3] In light of Plaintiff's argument, it is also worth noting that Plaintiff did not sue the BMVC, but sued the BMV who is represented by Indiana's Attorney General.

Finally, Plaintiff does not argue that the BMVC is subject to state taxes. Indiana Code § 9-16-1-4.5(b)(2)(A) provides that license branches are required to collect and transmit taxes to the county treasurer, but nothing before the Court suggests that the BMVC is subject to state taxes. In fact, Indiana Code § 9-16-2-4 states that "[p]roperty of the commission is public property devoted to an essential public and governmental function and purpose and is exempt from all taxes and special assessments of the state or a political subdivision of the state."

In summary, the five subfactors set forth by the Seventh Circuit do not cumulatively weigh in favor of financial autonomy. While the BMVC can raise funds through service charges, may enter into contracts, and procure insurance, the BMVC currently receives roughly $80,076,652 in appropriations each year as demonstrated by Indiana's state budget report for 2009 to 2011. The BMVC is also required to transfer funds to the state treasury on a daily basis, required to submit budget reports, is not subject to state taxes, and certain judgments against the BMVC would impact the state treasury. Accordingly, the Magistrate Judge finds that the BMVC is not financially autonomous.

2. *Legal status*

The BMVC's legal status also supports the conclusion that the BMVC is an arm of the state. Indiana Code § 9-15-1-1 states that the commission "is a body corporate and politic, and though separate from the state, the exercise by the commission of the commission's power constitutes an essential government function." In *Deharder*, the Court found that "a public body corporate and politic of the state of Indiana" is neither a state agency nor a private corporation. *DeHarder*, 909 F. Supp. at 612. Rather, such language establishes a quasi-governmental corporate entity that is separate and distinct from the state of Indiana and therefore not entitled to

8

immunity.  *Id.*; *see also* Official Opinion, No. 91-10, Office of the Att'y Gen. of the State of Ind. at *3–5, 191 Ind. AG LEXIS 10 (explaining that certain "body politic and corporate" entities created for a governmental or public purpose are separate from the state).[4]  In *Shisler* and *Burrus*, the Court found that the phrases "self-supporting," "separate from the state," and "function as much as possible as an entrepreneurial business enterprise" also demonstrated legal independence from the state.  *Shisler*, 2008 WL 1884061, at *3; *Burrus*, 2008 WL 111004, at *4.  In contrast, this Court has also held that "public universities or their boards of trustees are also separate bodies corporate and politic, and they are all treated as State agencies protected by the Eleventh Amendment."  *Turner v. State of Ind. Teachers' Ret. Fund*, No. 1:07-cv-1637-DFH-JMS, 2008 WL 2324114, at *5 (S.D. Ind. June 5, 2008).  Considering these inconsistent results, it is unclear from the BMVC's statutory definition whether the legislature actually intended for the BMVC to be separate from the state, especially since the legislature did not include language such as "self-supporting" or "function as much as possible as an entrepreneurial business enterprise."  *See Turner*, 2008 WL 2324114, at *5 ("This type of inconsistency among statutory provisions is not uncommon, of course, because the statutes are designed to address a host of issues other than the Eleventh Amendment.").  For this reason, "the Seventh Circuit has taught courts to look to substance over form when evaluating the entity's general legal status."  *Id.*

When considering substance over form, the inquiry includes "the selection of the members of the governing body, the entity's powers, and whether the entity serves the State as a whole or only a region."  *Id.* at *4.  In the BMVC's case, it has a board of directors appointed by

---

[4]While the Court takes into account the Attorney General's opinion, the opinion does not have binding precedential effect on this Court, and in any event, does not specifically mention the BMVC.  *See Burrus*, 2008 WL 111004, at *3 n.4.

9

the governor for four-year terms. Ind. Code § 9-15-1-2. This suggests the conclusion that the BMVC is not separate from the state. *See Kashani v. Purdue Univ.*, 813 F.2d 843, 846 (7th Cir. 1987) ("Very significant in considering whether Purdue has sufficient autonomy from the State of Indiana . . . is the fact that the majority of the members of Purdue's governing council, the Board of Trustees, are selected by the Governor of Indiana."); *Turner*, 2008 WL 2324114, at *5 ("[I]ndependence is undercut by the fact that all of the members of the board are selected by the governor and serve for a maximum of four years."). The powers and duties designated to the BMVC are also similar to a state agency. For example, the BMVC can charge fees, administer license branch funds, develop policies, establish rules for the operation and maintenance of service branches, and can recommend legislation to the governor. Ind. Code § 9-15-2-1. While Indiana law is unique from other states in many respects, the powers and duties designated to the BMVC are largely similar to those of other motor vehicle departments across the United States, and courts have consistently held that such entities are state agencies protected by the Eleventh Amendment. *See, e.g., Ezell v. Ohio Bureau of Motor Vehicles*, No. cv-10-08673-GAF, 2010 WL 5392825, at *3 (C.D. Cal. Nov. 23, 2010); *Vacek v. Pa. Jud. Conduct Bd.*, No. 08-221, 2010 WL 3338809, at *7 (W.D. Pa. Aug. 3, 2010); *Mahan v. Huber*, No. 09-cv-00098-PAB-BNB, 2010 WL 749807, at *5 (D. Colo. Mar. 2, 2010); *May v. Iowa Dep't of Motor Vehicles*, No. cv-09-487-S-BLW, 2010 WL 1462353, at *2 (D. Idaho Apr. 8, 2010); *Kraege v. Busalacchi*, 687 F. Supp. 2d 834 (W.D. Wis. 2009); *Farr v. Motor Vehicles Dep't, DMV of Union Cnty.*, No. 7:09-2919-HMH-JRM, 2009 WL 5102712, at *3 (D.S.C. Dec. 17, 2009); *Bailey v. Blue*, No. 5:09-cv-195-F, 2009 WL 1675933, at *2 (E.D.N.C. June 11, 2009); *Copeland v. Ohio*, No. 5:07-cv-67, 2007 WL 2177897, at *1 (N.D. Ohio July 27, 2007). Finally, the BMVC serves the entire state

10

and not merely a region. *See Turner*, 2008 WL 2324114, at *4 ("[W]hether the entity serves the State as a whole or only a region" is another determinative factor). Accordingly, these factors indicate that the BMVC is legally part of the state. In light of the BMVC's financial and legal status, the Magistrate Judge finds that the BMVC is part of the state and therefore the Eleventh Amendment should bar Plaintiff's ADA and FMLA claims.

The Court further notes that while Defendant requests that all of Plaintiff's claims be dismissed, neither party makes any arguments with respect to Plaintiff's Title V ADA claim. Normally, undeveloped arguments are subject to waiver, but there is no point in prolonging this litigation when Defendant requests that all claims be dismissed, and Plaintiff decided to limit its Eleventh Amendment argument to a distinction between the BMV and BMVC. Moreover, case law supports dismissal of the Title V claim. *See Demshki v. Montheith*, 255 F.3d 986, 988 (9th Cir. 2001) (concluding that Title V claims are barred by the Eleventh Amendment, at least when they are predicated on a Title I claim); *Paddilla v. N.Y. State Dep't of Labor*, No. 09-cv-5291, 2010 WL 3835182, at *4–5 (S.D.N.Y. Sept. 13, 2010) (holding that Title V claims predicated on Title I claims are subject to the Eleventh Amendment); *Scott v. Wis. Dep't of Workforce Dev.*, No. 06-c-308-c, 2006 WL 3792659, at *2 (W.D. Wis. 2006) (concluding that legislative history for Title I and Title V is likely to be similar, and dismissing the Title V claim because "it was plaintiff's burden to show that immunity was abrogated."); *Cisneros v. Colorado*, No. 03-cv-02122-WDMCB, 2005 WL 1719755, at *3 (D. Colo. July 22, 2005) (holding that Title V claims predicated on Title I claims are subject to the Eleventh Amendment).[5]

---

[5]Some courts have held that states are not entitled to immunity for Title V claims, but those holdings were limited to Title V claims predicated on Title II claims. *See, e.g., McCollum v. Owensboro Cmty. & Tech. Coll.*, 2010 WL 5393852, at *3 (W.D. Ky. 2010); *see also Roberts*

### III. Conclusion

For the reasons above, the Magistrate Judge finds that Plaintiff's ADA and FMLA claims are barred by the Eleventh Amendment, and therefore recommends that Defendant's motion for summary judgment [Docket No. 44] be granted. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Dated: 12/15/2011

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

---

*v. Pa. Dep't of Pub. Welfare*, 199 F. Supp. 2d 249, 254 (E.D. Pa. 2002) (concluding that sovereign immunity did not apply to a Title V claim predicated on First Amendment violations). Plaintiff's Title V claim is nonetheless predicated on a Title I claim [Docket No. 27], and the Seventh Circuit would not likely adopt the approach in *McCollum* since the Seventh Circuit has held that states are immune from Title II claims. *See Strong v. Ill. Dep't of Human Res.*, 40 F. App'x 297, 298 (7th Cir. 2002).

Copies to:

Laura Lee Bowker
INDIANA ATTORNEY GENERAL
laura.bowker@atg.in.gov

Corinne T.W. Gilchrist
OFFICE OF THE INDIANA ATTORNEY GENERAL
corinne.gilchrist@atg.in.gov

Daniel LaPointe Kent
LAPOINTE LAW FIRM P.C.
dkent@lapointelawfirm.com

Mary Jane Lapointe
LAPOINTE LAW FIRM PC
maryj@lapointelawfirm.com